MORGAN, LEWIS & BOCKIUS LLP
Richard W. Esterkin
richard.esterkin@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501

Attorneys for Appellant

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA –

# WESTERN DIVISION

| | |
|---|---|
| AMAZON LOGISTICS, INC., | Case No. 2:20-cv-03230-AB |
| Appellant, | USBC Case No. 2:19-bk-14989-WB |
| v. | **APPELLANT AMAZON LOGISTICS, INC.'S OPENING BRIEF** |
| SCOOBEEZ, | |
| Appellee. | |

**Corporate Disclosure Statement**

1.      Appellant, Amazon Logistics, Inc., is a wholly owned subsidiary of Amazon.com, Inc.

2.      No publicly held company holds 10% or more of the stock of Amazon.com, Inc.

Dated: July 1, 2020                                     MORGAN, LEWIS & BOCKIUS LLP
                                                        Richard W. Esterkin


                                                        By  */s/ Richard W. Esterkin*
                                                        Richard W. Esterkin
                                                        300 South Grand Avenue
                                                        Twenty-Second Floor
                                                        Los Angeles, CA  90071-3132
                                                        Tel:     (213) 612-2500
                                                        Fax:     (213) 612-2501
                                                        richard.esterkin@morganlewis.com

                                                        *Attorneys for Appellant, Amazon
                                                        Logistics, Inc.*

# **TABLE OF CONTENTS**

**Page**

Corporate Disclosure Statement ................................................................ 2

TABLE OF AUTHORITIES ................................................................... 4

JURISDICTIONAL STATEMENT ........................................................ 6

STATEMENT OF THE ISSUES PRESENTED ..................................... 6

STATEMENT OF THE CASE ................................................................ 7

SUMMARY OF THE ARGUMENT ...................................................... 8

    I.    The Bankruptcy Court Erred as a Matter of Law in Determining that the Automatic Stay Required Amazon to Provide Business to Scoobeez. ............................................... 8

    II.   The Bankruptcy Court Abused its Discretion by Denying Amazon's Motion to Modify the Stay to Permit Amazon to Terminate its Contract with Scoobeez. .............................. 8

ARGUMENT ....................................................................................... 11

    I.    STATEMENT OF FACTS ...................................................... 11

    II.   THE AUTOMATIC STAY DOES NOT REQUIRE AMAZON TO DO BUSINESS WITH SCOOBEEZ. ......................... 14

    III.  THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY DENYING AMAZON'S MOTION TO MODIFY THE STAY. ............................................................ 16

CONCLUSION ................................................................................... 20

CERTIFICATE OF COMPLIANCE .................................................. 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3 **Cases**

4 *In re Adana Mortgage Bankers, Inc.,*
     12 B.R. 977 (Bankr. N. D. Ga. 1980) ........................................................... 18

5

6 *Bonneville Power Administration v. Mirant Corp. (In re Mirant Corp.),*
     440 F.3d 238 (5th Cir. 2006) ....................................................................... 18

7

8 *Butner v. United States,*
     440 U.S. 48, 99 S.Ct. 914 (1979) ............................................................. 8, 14

9 *In re Clearpoint Business Resources, Inc.,*
     442 B.R. 292 (Bankr. Del. 2010) ................................................................. 15

10

11 *In re Deppe,*
     110 B.R. 898 (Bankr. Minn. 1990) ............................................................. 19

12 *FAA v. Gull Air, Inc. (In re Gull Air, Inc.),*
     890 F.2d 1255 (1st Cir. 1989) ........................................................... 8, 14, 15

13

14 *Highmark Inc. v. Allcare Health Management Systems, Inc.,*
     572 U.S. 559 134 S.Ct. 1744 (2014) ............................................................. 6

15 *In re Mantachie Apartment Homes, LLC,*
     488 B.R. 325 (Bankr. N.D. Miss. 2013) ....................................................... 16

16

17 *Moody v. Amoco Oil Co. (In re Moody),*
     734 F.2d 1200 (7th Cir. 1984), *cert. denied*, 469 U.S. 982 (1984) ................... 14

18 *In re National Environmental Waste Corp.,*
     191 B.R. 832 (Bankr. C.D. Cal. 1996) ......................................................... 19

19

20 *Ritzen Group, Inc. v. Jackson Masonry, LLC,*
     140 S.Ct. 582 (2020) ..................................................................................... 6

21 *In re Tudor Motor Lodge Assoc. Limited Partnership,*
     102 B.R. 936 (Bankr. N.J. 1989) ................................................................. 16

22

23 *Matter of West Electronics, Inc.,*
     852 F.2d 79 (3rd Cir. 1988) ......................................................................... 18

24

25 **Statutes**

26 11 U.S.C. § 362 .............................................................................. *passim*

27 11 U.S.C. § 365(e)(2) .................................................................................. 18

28 11 U.S.C. § 1129(a)(11) ......................................................................... 10, 18

28 U.S.C. § 157(a) ............................................................................................ 6

28 U.S.C. § 158(a)(1) ....................................................................................... 6

28 U.S.C. § 1334(b) .......................................................................................... 6

**Other Authorities**

Federal Rules of Bankruptcy Procedure 8002(a)(1) ....................................... 6

Federal Rules of Bankruptcy Procedure Rule 8015 ...................................... 21

**JURISDICTIONAL STATEMENT**

A.    This appeal arises from:  (a) the Bankruptcy Court's determination that the automatic stay provided for in 11 U.S.C. § 362(a)(3) created rights in favor of the debtor/appellee, Scoobeez, ("**Scoobeez**") that it did not otherwise have under the express terms of the parties' contract and (b) the Bankruptcy Court's denial of Appellant, Amazon Logistics, Inc.'s, motion for an order modifying the automatic stay so as to permit it to exercise its contractual rights (the "**Motion**").  The Bankruptcy Court had subject matter jurisdiction over the Motion pursuant to 28 U.S.C. § 1334(b) and this Court's General Order No. 13-05 pursuant to 28 U.S.C. § 157(a) referring matters within its bankruptcy jurisdiction to the Bankruptcy Court.

B.    This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1) as this appeal relates to a final order and Amazon Logistics, Inc. ("**Amazon**") has elected to have this appeal heard by this Court rather than the bankruptcy appellate panel.  *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S.Ct. 582 (2020).

C.    This appeal was timely filed as the order appealed from was entered on April 2, 2020 and Amazon's Notice of Appeal was filed that same day.  Fed. R. Bankr. P. 8002(a)(1) (notice of appeal must be filed within 14 days after entry of the order to which the appeal relates).

D.    This appeal is from a final order.

**STATEMENT OF THE ISSUES PRESENTED**

This appeal raises two independent issues:

First, whether the Bankruptcy Court erred by concluding that the automatic stay required Amazon to do business with Scoobeez, despite the clear language of the parties' agreement disclaiming any such obligation.  The Bankruptcy Court's decision as to this issue raises an issue of law that this Court reviews *de novo*. *Highmark Inc. v. Allcare Health Management Systems, Inc.*, 572 U.S. 559, 563

(2014) ("Traditionally, decisions on 'questions of law' are reviewable *de novo* . . . .").

Second, whether the Bankruptcy Court abused its discretion by denying the Motion and, thereby, preventing Amazon from exercising its right to terminate its contract with Scoobeez (the "**Agreement**") which, by its terms, is terminable by either party without cause.

## STATEMENT OF THE CASE

Amazon arranges for the delivery of merchandise purchased on the Amazon.com website to consumers.  In order to do so, it contracts with delivery service providers, such as Scoobeez, who receive packages at Amazon's delivery stations and deliver those packages to consumers.  This appeal involves two provisions of the Agreement.

First, the Agreement clearly provides that Amazon is not required to utilize Scoobeez's services:

> You acknowledge and agree that Amazon makes no promises or representations whatsoever as to the amount of business that you can expect at any time under these Terms, whether before or after any Work Order becomes binding on you.

[ER1449]

Second, the contract grants both Amazon and Scoobeez the right to terminate the Agreement "at any time, with or without cause, by providing the other party with 30 days' prior written notice."  [ER1454]

On October 28, 2019, Amazon filed the Motion in the Bankruptcy Court seeking an order:  (a) determining that the automatic stay did not require it to provide business to Scoobeez, (b) that, if the Bankruptcy Court determined that the automatic stay did require Amazon to provide business to Scoobeez, modifying the automatic stay to relieve Amazon of that obligation and (c) modifying the

automatic stay to permit Amazon to provide Scoobeez with a 30 day termination notice pursuant to Section 8(a) of the Agreement.  On April 2, 2020, the Bankruptcy Court entered its order denying the Motion in its entirety.  [ER4317-4320]  This appeal followed.

## SUMMARY OF THE ARGUMENT

I.      The Bankruptcy Court Erred as a Matter of Law in Determining that the Automatic Stay Required Amazon to Provide Business to Scoobeez.

Bankruptcy Code section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362.  The estate's property rights are defined by applicable non-bankruptcy law.  *Butner v. United States*, 440 U.S. 48, 55 (1979).  The automatic stay does not create new property rights or enhance those otherwise possessed by the bankruptcy estate.  *FAA v. Gull Air, Inc. (In re Gull Air, Inc.)*, 890 F.2d 1255, 1261 (1st Cir. 1989).

Here, Scoobeez's property rights are defined by the Agreement.  The Agreement does not compel Amazon to provide any business to Scoobeez.  Accordingly, just as Scoobeez had no right to demand business from Amazon prior to its bankruptcy filing, it has no right to demand that business during its bankruptcy case.  As a result, were Amazon to cease providing business to Scoobeez, it would not be engaging in an act to obtain possession of, or exercising control over, Scoobeez's property in violation of the automatic stay.  Put another way, contrary to applicable law, the Bankruptcy Court's order permits Scoobeez to use the automatic stay to create a property right that does not otherwise exist.

II.     The Bankruptcy Court Abused its Discretion by Denying Amazon's Motion to Modify the Stay to Permit Amazon to Terminate its Contract with Scoobeez.

As noted above, the Agreement permits both Amazon and Scoobeez to terminate the Agreement *without cause* upon 30 days' written notice.  In denying

the Motion, which sought to permit Amazon to exercise that right, the Bankruptcy Court balanced the harm to Scoobeez's bankruptcy estate from granting the requested relief against the harm to Amazon from denying the relief.  In doing so, the Bankruptcy Court abused its discretion in concluding that the balance of harms weighed in favor of denying the Motion.

The uncontradicted evidence before the Bankruptcy Court demonstrated that the harms to Amazon included:

- Paying Scoobeez over $250,000 per month in excess of the cost of an alternative delivery service provider;
- Continuing to expose Amazon to litigation risk from Scoobeez's employment practices which, in turn causes Amazon to
  - Expend costs defending and settling the litigation;
  - Utilize its employees' time in connection with the litigation, rather than focusing on Amazon's business;
  - Be exposed to adverse publicity when the press reports that drivers delivering Amazon products are not being paid in compliance with applicable law;
  - Reveal confidential business information during litigation discovery; and
  - Expose its delivery network to capacity risks due to the effect of the litigation upon its delivery service providers.

The Bankruptcy Court balanced those harms against the harm to Scoobeez's reorganization efforts, noting that, because Amazon was Scoobeez's only client, granting the requested relief would end Scoobeez's efforts to reorganize.  However, the Bankruptcy Court simply ignored the fact that there was no evidence that Scoobeez could successfully reorganize.  In fact, all of the evidence was that no reorganization was possible and, that, even if Scoobeez could reorganize, the Agreement was irrelevant to that reorganization because, as soon as the

reorganization became effective, the automatic stay would terminate and Amazon could then exercise its 30-day termination right.  Among other things, the record considered by the Bankruptcy Court demonstrated that:

- Scoobeez has no clients other than Amazon, despite attempting to obtain other clients throughout its relationship with Amazon (beginning in 2015) and being told on October 7, 2019 that Amazon intended to terminate its relationship with Scoobeez as soon as it was able to do so.

- Once a plan of reorganization is confirmed and becomes effective, the automatic stay will terminate and Amazon will be free to exercise its right to terminate its contract on 30 days' notice.  11 U.S.C. § 362(c)(1).  As a result, Scoobeez will not have any material income source 30 days after its plan of reorganization becomes effective.

- The proposed plan of reorganization that was before the Court provides, among other things, that Hillair Capital Management, LLC and Hillair Capital Investments, LP ("collectively, "**Hillair**") are to receive a promissory note requiring the payment of a minimum of $100,000 per week.  There was no evidence presented to the Bankruptcy Court, however, as to any prospective source of the funds needed to make that payment.  As a result, the only conclusion that the Bankruptcy Court could possibly reach was that the plan was not feasible and, therefore, not confirmable.  *See* 11 U.S.C. § 1129(a)(11) (requiring that, in order to confirm a plan of reorganization, the bankruptcy court must conclude that "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan . . . .").

As a result, the Bankruptcy Court's denial of the Motion simply holds Amazon hostage during the interim to no good purpose.  Doing so was an abuse of the Bankruptcy Court's discretion.

## ARGUMENT

### I.   STATEMENT OF FACTS

On September 2, 2015, Amazon and Scoobeez entered into the Agreement, which prescribes the terms pursuant to which Amazon could request that Scoobeez perform delivery services for it.  Specifically, the Agreement provides:

> At Amazon's request and as specified in one or more work orders that become binding upon you . . . you will provide transportation, delivery and related services . . . in accordance with these terms and conditions of these Terms, the Program Policies, and any performance standards set forth in each applicable Work Order.

Delivery Provider Terms of Service, ¶ 1(a), ER 1449.  The Agreement was also explicit that Amazon was not obligated to request that Scoobeez perform any services.

> You acknowledge and agree that Amazon makes no promises or representations whatsoever as to the amount of business that you can expect at any time under these Terms, whether before or after any Work Order becomes binding on you.

Delivery Provider Terms of Service, ¶ 1(c), ER 1449.  In addition, the Agreement provides that it would continue indefinitely until terminated by either party on 30 days' written notice.

> The term of these Terms will begin on the Effective Date and will continue until terminated in accordance with this Section 8.a (the "Term.").  Either party may terminate these

Terms at any time, without or without cause, by providing the other party with 30 days' prior written notice.  If the term of any Work Order extends beyond the Term, these Terms will survive for the purposes of that Work Order until the termination of that Work Order.

Delivery Provider Terms of Service, ¶ 8.a, ER 1454.

On April 19, 2019, Scoobeez filed a voluntary petition under chapter 11 of the United States Bankruptcy Code.[1]  Following the filing of Scoobeez's bankruptcy petition, Amazon continued to request delivery services from Scoobeez, paying Scoobeez approximately $3,500,000 to $4,000,000 per month.[2]  Scoobeez has no material source of income, apart from the income that it receives from Amazon, despite its consistent efforts to diversify its customer base since entering into the Agreement.[3]

Commencing in April 2019, Amazon formed a "Network Health Team" to evaluate all of the delivery services providers with whom Amazon was then doing business.[4]  That evaluation was conducted to identify poorly performing delivery service providers and to address excess capacity.[5]  After considering a number of other metrics, on August 9, 2019, the Network Health team determined to terminate Amazon's relationship with delivery services providers that had one or both of two characteristics:  (a) having embroiled Amazon in multiple wage/hour litigations and (b) having multiple violations of the delivery service provider's contract with Amazon.[6]  Scoobeez was one of 15 delivery services providers whose contracts

---

[1]  ER 0001-0016.

[2]  Declaration of George Voskanian, Ex. A, ER 2565-2569 (Dkt. No. 613).

[3]  Voskanian Dep. Tr. at 93:21-22, ER 2456; Sheikh Dep. Tran. at 168:14-16, ER 2439; Weiss Dep. Tran. at 55:8-13, ER 2487.

[4]  Wilson Dep. Tran. at 136:15-23, ER 2506.

[5]  Wilson Supp. Decl., Ex. A, ER 3916-3945.

[6]  Wilson Supp. Decl., Ex. B, ER 3946-3962.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

were scheduled for termination due to multiple wage hour litigations.[7]

On September 20, 2019, as part of its then pending motion to sell certain of its assets to its secured lender in exchange for credit against the debt secured by those assets, Scoobeez filed a notice stating that it intended to assume and assign the Agreement to the then prospective purchaser.[8]  On October 1, 2019, Amazon filed a timely objection to the assumption and assignment of the Agreement in which it stated, among other things, that:

> Moreover, the Debtors' attempt to assign the Agreement without Amazon's consent is a fruitless endeavor.  As noted above, Amazon is under no obligation to make use of the Debtors' services, or those of any assignee, if the Agreement is assumed and assigned to a third party. Further, even if the Agreement could somehow be read as obligating Amazon to utilize the Debtors' services, which it cannot, the Agreement is, by its terms, terminable by Amazon (and by Scoobeez) with or without cause, on 30 days' notice.

Bankr. Dkt. No. 349 at 6:19-24, ER 0584.

On October 7, 2019, Scoobeez was informed that Amazon intended to exercise its right to terminate the Agreement.[9]  On October 25, 2019, Scoobeez filed an adversary proceeding seeking, among other relief, a declaration that any attempt by Amazon to reduce the number of routes awarded to Scoobeez would constitute a violation of the automatic stay [11 U.S.C. § 362(a)(3)].[10]  On October 28, 2019, Amazon filed the Motion, which sought an order determining that the

---

[7]  *Id.*; *see also* Wilson Dep. Tran. at 145:5-146:1 and 259:5-19, ER 2509-2510 and 2515.

[8]  Bankr. Dkt. No. 336, ER 0563-0574.

[9]  Declaration of Brian Weiss (Adv. Dkt. No. 2), pg. 23 of 47 at ¶ 10, ER 4574.

[10]  Motion to Intervene, Adv. Dkt. No. 6, ER 4613.

automatic stay did not require Amazon to utilize Scoobeez's services or, in the alternative for relief from the stay with respect to the number of routes awarded to Scoobeez and to permit Amazon to exercise its right to terminate the Agreement.[11] After substantial discovery, on April 20, 2020, the Bankruptcy Court entered its order denying Amazon's motion in its entirety.  This appeal ensued.

## II.  THE AUTOMATIC STAY DOES NOT REQUIRE AMAZON TO DO BUSINESS WITH SCOOBEEZ.

The Bankruptcy Court's refusal to acknowledge that the automatic stay does not compel Amazon to do business with Scoobeez violates a fundamental principle of bankruptcy law - a bankrupt's property rights are defined by applicable non-bankruptcy law.  *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *see also FAA v. Gull Air, Inc. (In re Gull Air, Inc.)*, 890 F.2d 1255, 1261 (1st Cir. 1989) ("The Bankruptcy Code does not create or enhance property rights of a debtor."); *Moody v. Amoco Oil Co. (In re Moody)*, 734 F.2d 1200, 1213 (7th Cir. 1984), *cert. denied*, 469 U.S. 982 (1984) ("The filing of the chapter 11 petition cannot expand debtor's rights . . . .").

Bankruptcy Code section 362(a)(3) provides that the filing of a petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ."  11 U.S.C. § 362(a)(3).  Here, Scoobeez' property rights are defined by the Agreement. The Agreement clearly provides that Scoobeez is to render services "[a]t Amazon's request" (Terms at ¶ 1(a), ER 1449).  Notably, in the Agreement, Scoobeez "acknowledge[d] and agree[d] that Amazon makes no promises or representations whatsoever as to the amount of business that you can expect at any time under these Terms . . . ." (Terms at ¶ 1(c), ER 1449).  Because Scoobeez' property rights are defined by the Agreement, and the Agreement does not grant Scoobeez a right to

---

[11]  Bk. Dkt. No. 393, ER 1424-1607.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1  obtain business from Amazon, the automatic stay does not require Amazon to

2  provide Scoobeez with business.

3      A number of courts have held that the automatic stay does not enlarge a

4  debtor's rights.  For example, in *Gull Air, supra*, prior to the petition date, the

5  debtor held landing slots at La Guardia Airport.  Post-petition, pursuant to the

6  FAA's regulations, the debtor's rights with respect to the landing slots were

7  automatically terminated as a result of the debtor's failure to use the slots.

8  Although the Court held that the debtor had "a limited proprietary interest in slots"

9  (890 F.2d at 1260) prior to the termination, because "[t]he Bankruptcy Code does

10  not create or enhance property rights of a debtor" (890 F.2d at 1261), the Court

11  concluded that "the automatic stay [] does not prevent the FAA from reallocating

12  the four LaGuardia slots."  890 F.2d at 1262.

13      Similarly, in *In re Clearpoint Business Resources, Inc.*, 442 B.R. 292 (Bankr.

14  Del. 2010), the debtor sought an order determining that its contract counter-party

15  had violated the automatic stay by contending that the parties' contract had

16  terminated.  The Court concluded that the contract had terminated by its terms and,

17  because "[a] Chapter 11 filing does not expand a debtor's rights" the contract

18  counter-party had not violated the automatic stay.  442 B.R. at 296-297.

19      The automatic stay protects a debtor's interest in property of the estate, but

20  only if a property interest exists under applicable non-bankruptcy law.  In this case,

21  however, the Agreement is clear that Scoobeez is not entitled to any business from

22  Amazon and the fact that all parties so understood the Agreement was confirmed in

23  the depositions taken in discovery in relation to the Motion.[12]  As a result, the

24  Bankruptcy Court erred by denying the Motion and its order should be reversed.

25  ////

26  ////

27

28  [12]  *See* Weiss Depo. Tr. at 61:15-62:10, ER 4158-4159; McAvoy Depo. Tr. at 109:1-6, ER 4049.

III.   **THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY DENYING AMAZON'S MOTION TO MODIFY THE STAY**.

Bankruptcy Code section 362(d)(1) provides that "the court ***shall*** grant relief from the stay provided under subsection (a) of this section . . . (1) for cause . . . ." 11 U.S.C. § 362(d)(1) (emphasis added).  "'Cause' is not defined in [§ 362(d)(1)], giving the bankruptcy courts the flexibility to define cause in a particular case." *In re Mantachie Apartment Homes, LLC*, 488 B.R. 325, 331 (Bankr. N.D. Miss. 2013).  The Bankruptcy Court applied the correct standard when deciding Amazon's motion, i.e., "the consequences of the stay on the parties and the 'balance of hurt' in tailoring relief appropriate for the factual scenario." *In re Tudor Motor Lodge Assoc. Limited Partnership*, 102 B.R. 936, 954 (Bankr. N.J. 1989).  In doing so, however, it abused its discretion.

There was no dispute as to the facts relevant to the Bankruptcy Court's exercise of its discretion.  First, continuing the automatic stay in effect (assuming that it barred Amazon from ceasing to award any business to Scoobeez) would require Amazon to continue to do business with a delivery partner against its will and contrary to the parties' bargain in the Agreement.  As a result, Amazon would be required to:

- Pay Scoobeez over $250,000 per month in excess of the cost of an alternative delivery service provider;[13]
- Continue to expose Amazon to litigation risk from Scoobeez' employment practices which, in turn causes Amazon to
  - Expend costs defending and settling the litigation;[14]

---

[13]  Declaration of George Voskanian, Ex. A, ER 2565-2569 (Dkt. No. 613); Voskanian Depo. Tr. at 283:7-13, ER 4146.

[14]  Wilson Depo. Tr. at 262:9-12, ER 4183; McCabe Depo. Tr. at 202:5-22, ER 4064.

- o   Utilize its employees' time in connection with the litigation, rather than focusing on Amazon's business[15]
- o   Be exposed to adverse publicity when the press reports that drivers delivering Amazon products are not being paid in compliance with applicable law;[16]
- o   Reveal confidential business information during litigation discovery;[17] and
- o   Expose its delivery network to capacity risks due to the effect of the litigation upon its delivery service providers.[18]

Although there is nothing in the Agreement that prohibited Scoobeez from attempting to obtain other clients,[19] and Scoobeez was "always attempting to diversify,"[20] Amazon is Scoobeez's only client.[21]  As a result, if Amazon were permitted to terminate the Agreement, Scoobeez would lack any reasonable prospect for reorganization.  Predicated upon that fact, the Bankruptcy Court concluded that the "balance of harms tips in favor of the debtors rather than Amazon . . . ."[22]

The problem with the Bankruptcy Court's conclusion is that there was no evidence before the Bankruptcy Court that Scoobeez could successfully reorganize. In fact, all of the evidence was to the contrary.  In order to confirm any plan of reorganization, the Bankruptcy Court is required to find that "[c]onfirmation of the plan is not likely to be followed by liquidation, or the need for further financial

---

[15]   Wilson Depo. Tr. at 262:9-12, ER 4183; McCabe Depo. Tr. at 202:5-22, ER 4064.

[16]   Wilson Depo. Tr. at 262:9-12, ER 4183; McCabe Depo. Tr. at 202:5-22, ER 4064.

[17]   Wilson Depo. Tr. at 262:9-12, ER 4183.

[18]   McCabe Depo. Tr. at 108:12-16, ER 4060.

[19]   Agreement, ER 1438-1447; Voskanian Depo. Tr. at 94:17-23, ER 4126.

[20]   Voskanian Depo. Tr. at 93:18-22, ER 4125.

[21]   Declaration of Brian Weiss (Adv. Dkt. No. 2), pg. 22 of 47 at ¶ 8, ER 4573.

[22]   March 19, 2020 Hearing Transcript at 19:22-20:4, ER 4283-4284.

reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed under the plan." 11 U.S.C. § 1129(a)(11).

On February 14, 2020, five days before its supplemental opposition to the Motion was due to be filed, Scoobeez filed a plan of reorganization for the obvious purpose of bolstering its argument to the Bankruptcy Court that a reorganization was in prospect and that granting the motion would destroy that reorganization.[23] Among other things, that plan required the reorganized debtor to pay $100,000 per week to Hillair following the effective date of the plan.[24]  Not only was there no evidence of Scoobeez's ability to make that payment, all of the evidence conclusively demonstrated that Scoobeez would not be able to do so since its only client would cease doing business with Scoobeez immediately following the plan's effective date.  Thus, the reorganization that the Bankruptcy Court relied upon to balance the harms was illusory.

A number of courts have considered the balance of the harms in the context of a contract counterparty's request for relief from the automatic stay when, as here, the contract cannot facilitate a reorganization.  *Matter of West Electronics, Inc.*, 852 F.2d 79 (3rd Cir. 1988) (reversing order denying relief from stay to permit non-debtor to terminate its contract as abuse of discretion when debtor in possession could not assume the contract under Federal law); *Bonneville Power Administration v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238 (5th Cir. 2006) (relief from stay is appropriate to permit contract termination if exception to enforcement of *ipso facto* clause provided for in § 365(e)(2) applies so contract cannot be assumed); *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977 (Bankr. N. D. Ga. 1980) (relief from

---

[23]  *Chapter 11 Joint Plan of Reorganization as Proposed by the Debtors, Hillair and the Official Committee of Unsecured Creditors* (Dkt. No. 599), ER 2202-2269 (the "Plan").

[24]  Plan §§ III.C.2.b (21:1-15) (Hillair to receive the Post Effective Date Hillair Claim) and II.A.81 (12:27-13:7) (defining the Post Effective Date Hillair Claim as including a promissory note in the sum of $3,000,000 to be paid with interest at 9% per annum at the rate of at least $100,000 per week) ER 2227 and 2215-2219.

1   stay granted to terminate contract that was not assumable); *In re National*
2   *Environmental Waste Corp.*, 191 B.R. 832, 838 (Bankr. C.D. Cal. 1996) (annulling
3   stay retroactively to ratify termination of waste hauling contract by City because,
4   "had the City applied to the Court for relief from the automatic stay to terminate the
5   Newco contract, the Court would have routinely granted the motion."); *In re Deppe*,
6   110 B.R. 898, 907 (Bankr. Minn. 1990) (granting relief from the automatic stay to
7   permit termination of rejected contract stating "11 U.S.C. § 362(a) maintains a
8   tenuous veil of protection over the estate's rights, such as they are.  Nothing would
9   be gained for creditors of the estate by preserving that veil.  [The contract counter-
10  party] is entitled to the relief which it requests.").

11          The Bankruptcy Court's decision to deny the Motion and, thereby, prevent
12  Amazon from exercising its contractual rights so as to preserve that contract for a
13  possible reorganization was an abuse of discretion.  The evidence before the
14  Bankruptcy Court conclusively demonstrated that Scoobeez had no other business
15  and had been unsuccessful in obtaining any other material business.  Scoobeez
16  failed to present any evidence that any new business was in prospect.  Thus,
17  because Amazon would be free to terminate the Agreement upon a plan of
18  reorganization becoming effective, there was no feasible plan of reorganization in
19  prospect that justified preventing Amazon from exercising its termination right.  As
20  a result, as in the cased cited above, the Agreement was immaterial to Scoobeez's
21  reorganization efforts, the concrete harms being suffered by Amazon vastly
22  outweighed the non-existent harm to Scoobeez's non-existent prospects for
23  reorganization and the Bankruptcy Court abused its discretion by denying the
24  Motion.  As a consequence, this Court should reverse the Bankruptcy Court's
25  denial of Amazon's motion and enter an order granting Amazon relief from the
26  automatic stay so that it may terminate the Agreement.

27  ////

28  ///

1

**CONCLUSION**

2       In conclusion, for the foregoing reasons, Amazon requests that this Court

3   enter an order stating:  (a) the automatic stay does not require Amazon to do

4   business with Scoobeez and (b) to the extent that the automatic stay otherwise

5   restrains Amazon from exercising its rights under the Agreement, the stay is

6   modified so as to permit Amazon to terminate the Agreement.

7   Dated: July 1, 2020                    MORGAN, LEWIS & BOCKIUS LLP
                                           Richard W. Esterkin
8

9

10                                   By  /s/ Richard W. Esterkin
                                         Richard W. Esterkin
11                                       300 South Grand Avenue
                                         Twenty-Second Floor
12                                       Los Angeles, CA  90071-3132
                                         Tel:    (213) 612-2500
13                                       Fax:    (213) 612-2501
                                         richard.esterkin@morganlewis.com
14
                                         *Attorneys for Appellant, Amazon*
15                                       *Logistics, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rules of Bankruptcy Procedure Rule 8015(h), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rules of Bankruptcy Procedure Rule 8015(A)(7)(b)(ii).

1.     Exclusive of the exempted portions of the brief specified in Federal Rules of Bankruptcy Procedure Rule 8015(g), this brief contains 4,551 words.

2.     This brief has been prepared using Microsoft Word in 14-point Times New Roman font.  The undersigned has relied upon the word count feature of Microsoft Word in preparing this certificate.

Dated: July 1, 2020                    MORGAN, LEWIS & BOCKIUS LLP
                                       Richard W. Esterkin


                                       By  /s/ Richard W. Esterkin
                                       Richard W. Esterkin
                                       300 South Grand Avenue
                                       Twenty-Second Floor
                                       Los Angeles, CA  90071-3132
                                       Tel:     (213) 612-2500
                                       Fax:    (213) 612-2501
                                       richard.esterkin@morganlewis.com

                                       *Attorneys for Appellant, Amazon*
                                       *Logistics, Inc.*

## **PROOF OF SERVICE**

I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is One Market, Spear Street Tower, San Francisco, CA 94105-1596.

On July 1, 2020, I served true and correct copies of the following documents:

### **APPELLANT AMAZON LOGISTICS, INC.'S OPENING BRIEF**

☒  [ELECTRONIC TRANSMISSION] by electronically transmitting the above-referenced documents to the Clerk's Office using the CM/ECF System of the United States District Court, Central District of California for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

Ashley Marie McDow and John Simon on behalf of Appellee, Scoobeez, Inc.
amcdow@*foley*.com; jsimon@foley.com

Sean A O'Keefe on behalf of Appellee, Scoobeez, Inc.
sokeefe@okeefelc.com

Shane J Moses on behalf of Appellee, Scoobeez, Inc.
smoses@foley.com

Dare Law on behalf of the United States Trustee
dare.kaw@usdoj.gov

☒  [BY ELECTRONIC MAIL] by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

David Neale and John-Patrick M. Fritz on behalf of the Official Committee of Unsecured Creditors
DLN@lnbyb.com; JPF@lnbyb.com

Jennifer L. Nassiri and Crystal Nix-Hines on behalf of Hillair Capital Management, LLC
jennifernassiri@quinnemanuel.com; crystalnixhines@quinnemanuel.com

Executed on July 1, 2020, at Los Angeles, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

/s/ Ellen Woodward

_____
Ellen Woodward

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22